**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 17a0073n.06

Case No. 16-1429

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jan 26, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| JESSE DESEAN RIGGINS, | ) | MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

**BEFORE: MERRITT, CLAY, and DONALD, Circuit Judges**

**BERNICE BOUIE DONALD, Circuit Judge.** Petitioner, Jesse Desean Riggins, appeals the sentence imposed following his plea of guilty to conspiracy to interfere with commerce by robbery. The Government has moved to dismiss, arguing that Riggins has waived his right to bring this appeal. We agree that Riggins' right to bring this appeal is foreclosed by the appellate waiver he signed. We therefore **DISMISS** the appeal.

I.

In August 2014, Riggins' co-defendant, Britnei Rodgers, rented a white Chevrolet Tahoe from a car rental agency near the Detroit-Metropolitan Airport in Michigan. Shortly after, in September 2014, Riggins and co-defendant Delonte Harris planned and organized the robbery of a jewelry store in Omaha, Nebraska. The planning occurred while defendants were still located

within the Eastern District of Michigan. Subsequently, Harris drove several of the co-defendants from Michigan to Nebraska, in the white Tahoe rented by Rodgers. Upon his arrival to Omaha, Riggins cased the jewelry store called Gunderson's Jewelry, and Harris stole a car that would be used as the getaway vehicle.

On September 9, 2014, four of the defendants—not including Riggins—entered Gunderson's Jewelry. While in the store, the defendants smashed display cases with sledgehammers and escaped with approximately forty-five Rolex watches. Riggins and his co-defendants then drove back to the Detroit Michigan area where they sold the Rolex watches.

On March 12, 2015, Riggins, along with several other co-defendants, was indicted by a grand jury in a superseding indictment for conspiracy to interfere with commerce by robbery, in violation of 18 U.S.C. § 1951(a). (R. 60.) The superseding indictment alleged that on or about August 18, 2014 to September 10, 2014, Riggins conspired with his co-defendants to rob a jewelry/watch store in Omaha Nebraska. (R. 60, PageID # 107–08.) A second superseding indictment, which charged Riggins with the same offense as the superseding indictment, was entered on April 9, 2015. (R. 80.)

Riggins pled guilty to count two of the second superseding indictment pursuant to a Rule 11 Plea Agreement on October 28, 2015. (R. 151.) The parties agreed that under Federal Rule of Criminal Procedure 11(c)(1)(C), Riggins' sentence would not exceed the bottom of the Sentencing Guideline range, as set forth by the agreement.[1] (R. 151, PageID # 470.) The plea agreement also contained a waiver, which provided:

> The defendant waives any right he may have to appeal his conviction on any grounds. If the defendant's sentence does not

---

[1] In the plea agreement, the parties disagreed on what the applicable Guideline range should be. The Government recommended a range of 100 to 125 months, based on the addition of a four-level enhancement under USSG § 2B3.1(b)(2)(D). On the other hand, Riggins recommended a Guideline range of 92 to 115 months, based on a three-level enhancement under 2B3.1(b)(2)(E).

> exceed 100 months, the defendant also waives any right he may have to appeal his sentence on any grounds. If the defendant's sentence of imprisonment is at least 92 months the government waives any right it may have to appeal the defendant's sentence. This waiver shall not be construed to bar a claim by the defendant of ineffective assistance.

(R. 151, PageID # 473.)

The presentence report ("PSR") prepared by the Probation Office recommended that Riggins receive a four-level enhancement under USSG § 2B3.1(b)(2)(D) because a dangerous weapon was otherwise used, (6th Cir. Dkt. # 9, at 10), and ultimately recommended a Guideline range of 100 to 125 months, based on a total offense level of 27 and a criminal history category of IV. (*Id*. at 21.) Riggins objected to the four-level enhancement and the PSR's calculation of his criminal history category. Riggins also sought a downward departure based on the adjustments to the loss amount tables, which took effect shortly after Riggins pled guilty. At sentencing, the district court agreed that Riggins was entitled to a downward departure based on an adjustment to the loss tables, but overruled Riggins' other two objections. (R. 187, PageID # 749, 755, 760–61.) The district court determined that Riggins' applicable Guideline range was 92 to 115 months, and sentenced Riggins to 92 months in prison. (R. 187, PageID # 761.)

## II.

We review de novo whether a defendant has waived appellate rights in a valid plea agreement. *United States v. Detloff*, 794 F.3d 588, 592 (6th Cir. 2015) (citing *United States v. Murdock*, 398 F.3d 491, 496 (6th Cir. 2005)). "It is well settled that a defendant may waive any right, even a constitutional right, by means of a plea agreement." *United States v. Sawyer*, 825 F.3d 287, 291 (6th Cir. 2016) (quoting *United States v. Toth*, 668 F.3d 374, 377 (6th Cir. 2012)). We consider such waivers to be binding, *id*., and "[o]nly challenges to the validity of the waiver itself will be entertained on appeal," *Toth*, 668 F.3d at 377. Such challenges may

include a challenge that the waiver was not knowing and voluntary, that the defendant received ineffective assistance of counsel, or that it was not taken in compliance with Rule 11 of the Federal Rules of Criminal Procedure. *Toth*, 668 F.3d at 377–78 (citations omitted).

Here, Riggins does not address the appellate waiver in his brief and does not allege that his plea or waiver was invalid or involuntary. Rather, Riggins "urges the court to decide his appeal on the merits for the reason that . . . there is a conflict among the judicial decisions in the United States District Courts of the Eastern and Western Districts of Michigan as to the proper meaning and application of U.S.S.G. § 2B3.1(B)(2)." (6th Cir. Dkt. # 17.)

Initially, this Court has held that appellate waivers are not jurisdictional and, therefore, do "not divest th[e] Court of jurisdiction," and that the Court does not "indiscriminately enforce all appellate waivers." *United States v. Matthews*, 534 F. App'x 418, 424 (6th Cir. 2013) (citing *United States v. Caruthers*, 458 F.3d 459, 472 n.6 (6th Cir. 2006)). This Court has also noted that "[u]nder 'limited circumstances,' even a knowingly-entered, otherwise-valid appellate waiver will not bar a defendant's challenge to [his] sentence." *Id.* (citing *United States v. Ferguson*, 669 F.3d 756, 764 (6th Cir. 2012)). One of such limited circumstances is where the enforcement of the appellate-waiver provision will "result in a miscarriage of justice or undermine the proper functioning of the federal courts." *United States v. Lee*, 464 F. App'x 457, 458 (6th Cir. 2012); *see also United States v. Hower*, 442 F. App'x 213, 215 (6th Cir. 2011) (finding that no miscarriage of justice would occur if the defendant's sentence was not reviewed).[2]

---

[2] We note that the miscarriage of justice exception has only been recognized by this Court in unpublished opinions. *See Matthews*, 534 F. App'x at 425 ("Although we have never expressly recognized the miscarriage-of-justice exception to the enforcement of appellate waivers in a published decision, we have implicitly recognized it in several unpublished decisions.")

However, in recognizing this exception, this Court has held that an erroneous Guideline calculation is not a miscarriage of justice that will void an appellate wavier. *United States v. Weld*, 619 F. App'x 512, 513 (6th Cir. 2015); *see also United States v. Allen*, 635 F. App'x 311, 315 (6th Cir. 2016) (holding that because the defendant merely sought to challenge the district court's calculation of his advisory Guidelines range, the district court's discretionary decision regarding the extent to the USSG § 5K1.1 departure, and the consecutive nature of Allen's sentence, enforcing the waiver would not result in a miscarriage of justice); *Matthews*, 534 F. App'x at 426 (concluding that even if the district court erred as to its determination of the applicable relevant-conduct cross-references under USSG § 1B1.3, "such errors would not constitute a miscarriage of justice"). Rather, "[t]hese alleged errors—purported misapplications of the Guidelines—are the sort of errors envisioned by appeal waivers," *Allen*, 635 F. App'x at 315, and are "of the sort that [a defendant] should have anticipated when [he] bargained away [his] appeal rights, not an extraordinary miscarriage of justice," *Matthews*, 534 F. App'x at 426.

The record in this case indicates that the parties disagreed on the proper scoring for § 2B3.1(b)(2). The government argued that a dangerous weapon was "otherwise used," allowing for a four-level enhancement, while Riggins argued that the dangerous weapon was merely "brandished or possessed," allowing for a three-level enhancement. (R. 151, PageID # 465.) The plea agreement allowed for the sentencing court to decide the manner in which the weapon was used, and the resulting enhancement. (R. 151, PageID # 466.) Regardless, Riggins signed the plea agreement which expressly waived his right to appeal any sentence that did not exceed 100 months. (R. 151, PageID # 473.) The district court's decision to apply a four-level enhancement under § 2B3.1(b)(2) and to use a criminal history category of IV, which Riggins'

counsel conceded was correct, even if overstated, (R. 187, PageID # 17–18), is, at best, a miscalculation of the Guidelines, which does not arise to a miscarriage of justice.

III.

Riggins waived his right to appeal his sentence, and cannot show that any of the limited circumstances for disturbing a valid waiver exists here. For this reason, we dismiss the appeal.